UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BATTLEFIELD CENTER, L.P. and ) | |
| CHRISTOPHER KERSTEN, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:08CV00625 JCH |
| ) | |
| NATIONAL CITY CORPORATION, ) | |
| successor to merger to ) | |
| NATIONAL CITY BANK OF THE ) | |
| MIDWEST and ALLEGIANT BANK, ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon Defendant's Motion for Summary Judgment. (Doc. No. 10). Initially, Plaintiffs did not file a response to Defendant's Motion but instead filed a Motion for Continuance to Undertake Discovery on September 26, 2008. (Doc. No. 21). This Court denied Plaintiffs' Motion for Continuance to Undertake Discovery on October 1, 2008. (Doc. No. 28). Plaintiffs filed their Response to Defendant's Motion for Summary Judgment on October 10, 2008 (Doc. No. 31), and Defendant filed a Reply Memorandum in Support of its Motion on October 16, 2008. (Doc. No. 33). This matter has been fully briefed and is ready for disposition.

## BACKGROUND

These parties are not new to litigation. In fact, some of the facts and issues in this case have already been litigated and settled in prior state court litigation.

Plaintiff Battlefield Center is a Missouri Limited Partnership. (Defendant's Statement of Uncontroverted Material Facts ("SUMF"), Doc. No. 11-2, ¶ 2). Plaintiff Christopher Kersten ("Kersten") was a general partner of Battlefield Center. (SUMF, ¶ 5). Kersten has been in the real

estate business for over twenty years and is familiar with loan documentation. (SUMF, ¶ 4). On February 14, 2003, Kersten, on behalf of Battlefield, executed a promissory note for $1,897,892.47, in favor of National City. (SUMF, ¶ 6). On February 20, 2003, Kersten, on behalf of Battlefield, executed a promissory note for $75,000, in favor of National City. (SUMF, ¶ 8). On February 28, 2003, Kersten, on behalf of Battlefield, executed a promissory note for $201,785.13, in favor of National City. (SUMF, ¶ 7). These three promissory notes are collectively referred to as the "Battlefield Notes." (SUMF, ¶ 9). To secure the Battlefield Notes, Plaintiffs executed an unconditional guarantee, leasehold deeds of trust on the property, and an assignment of rents. (SUMF, ¶ 10).

Battlefield failed to make the payments under the Battlefield Notes and defaulted. (SUMF, ¶ 13). In fact, Kersten testified that the Battlefield Notes were "always in default." (SUMF, ¶ 14). On March 12, 2004, National City sued Kersten on his unconditional guarantee of the Battlefield Notes in the Circuit Court of St. Louis County. (SUMF, ¶ 15). On March 31, 2004, National City, Battlefield and Kersten executed a Forbearance Agreement. (SUMF, ¶ 16).

Thereafter, Battlefield defaulted under the Forebearance Agreement by failing to make the required payments. (SUMF, ¶ 17). As a result, the lawsuit in St. Louis County became active again and Kersten brought a counterclaim against National City for tortious interference, defamation and misrepresentation. (SUMF, ¶¶ 18, 19). The parties settled the St. Louis County lawsuit and executed a Settlement Agreement on or around September 28, 2004, and the parties filed voluntary dismissals of the state court litigation. (SUMF, ¶¶ 20-30, 33).

The Settlement Agreement provided a new maturity date of July 31, 2005 for the Battlefield Notes, but Battlefield was still required to make monthly installment payments on the Battlefield Notes. (SUMF, ¶ 23). The Settlement Agreement also provided that any default by Plaintiff under

- 2 -

"any terms or provision" of the Settlement Agreement constituted an "event of default," and Plaintiffs were not afforded a right to cure. (SUMF, ¶ 26). Under the Settlement Agreement, National City retained its right to assign the Battlefield Notes and collateral security to another entity. (SUMF, ¶¶ 28, 32). The Settlement Agreement also included a standard integration or merger clause that provided that the Settlement Agreement was the final and full agreement of the parties and "there are no unwritten oral agreements among the parties." (SUMF, ¶ 30).

Battlefield made only one payment following the execution of the Settlement Agreement before it again failed to make a monthly payment and defaulted on the Battlefield Notes. (SUMF, ¶ 34). Subsequent to this default under the Settlement Agreement, National City assigned the Battlefield Notes, Leasehold Deeds of Trust, Assignment of Rents, and Guarantee, for value received, to American First Federal, Inc. ("American First") (SUMF, ¶ 35). The Settlement Agreement, the Battlefield Notes and the Leasehold Deeds of Trust all specifically contemplated assignment by National City. (SUMF, ¶¶ 28, 32).

American First notified Plaintiffs that they were in default on or around February 15, 2005. (SUMF, ¶¶ 36-37). American First afforded Plaintiffs an opportunity to cure the defaults by March 2, 2005. (SUMF, ¶ 37). Plaintiffs never cured their defaults and, in April 2005, American First foreclosed on the Leasehold Deeds of Trust. (SUMF, ¶¶ 38-39). On May 6, 2005, American First sued Plaintiffs for the deficiency under the defaulted Battlefield Notes. (SUMF, ¶ 41). On November 28, 2007, a St. Louis County Circuit Court entered judgment against Battlefield and Kersten in favor of American First for the deficiency under the Battlefield Notes. (SUMF, ¶ 45).

In March 2008, Battlefield and Kersten filed the instant litigation against National City in state court, which was removed to this Court. (Doc. No. 1). Defendant filed its Motion for Summary Judgment on July 31, 2008. (Doc. No. 10). On Plaintiffs' motion, this Court dismissed Count I of

their Petition for Breach of the Covenant of Good Faith and Fair Dealing, with prejudice. (Doc. Nos. 20, 25). This opinion addresses the remaining two counts of Plaintiffs' complaint.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331, n.2. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

## DISCUSSION

### I. Parol Evidence Rule

"The parole evidence rule generally bars the admission of extrinsic evidence of a prior or contemporaneous agreement that contradicts the terms of an unambiguous and complete written contract, if the written contract is untainted by fraud, mistake, accident, or erroneous omission." North Am. Sav. Bank v. Resolution Trust Corp., 65 F.3d 111, 114 (8th Cir. 1995) (citing Union Elec. Co. v. Fundways, Ltd., 886 S.W.2d 169, 170 (Mo. Ct. App. 1994); Wulfing v. Kansas City S. Indus., Inc., 842 S.W.2d 133, 146 (Mo. Ct. App. 1992)). "The purpose of the parole evidence rule is to preserve the sanctity of a written agreement that is fully integrated." North Am. Sav. Bank, 65 F.3d at 114 (citing Missouri Sav. Ass'n v. Home Sav. of Am., 862 F.2d 1323, 1326 (8th Cir. 1988)). The parole evidence rule, however, does not bar admission of allegedly negligent misrepresentations. Cabinet Distribs. v. Redmond, 965 S.W.2d 309, 314 (Mo. Ct. App. 1998) (citation omitted). "The rationale for this rule is: 1) a speaker should not be able to avoid the consequences of a misrepresentation, fraudulent or negligent, by hiding behind an integration clause, and 2) the parole evidence rule is a rule of substantive contract law and inapplicable to negligent misrepresentation which sounds in tort." Id.

Here, the parties executed a Settlement Agreement that included an integration clause providing that the agreement was the final and full agreement of the parties. (SUMF, ¶ 30). Plaintiffs now argue that this Court should look to oral promises allegedly made by Defendant because Plaintiffs were victims of fraudulent and negligent promises by Defendant which improperly caused them to execute the Settlement Agreement and dismiss their counterclaim. (Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Memorandum in Opposition"), Doc. No. 31, pp. 2-3) Plaintiffs, however, have not demonstrated that this Court can or should look to

parole evidence outside the written agreement of the parties. Initially, the parties have not identified an ambiguity in the Settlement Agreement that would require the Court to look to parole evidence. Bank of Kirksville v. Small, 742 S.W.2d 127, 133 (Mo. 1987) (parole evidence is admissible to determine the intent of the parties where an ambiguity exists within the contract). Second, this Court does not find that the uncontroverted evidence supports a claim for fraudulent or negligent inducement to execute the Settlement Agreement sufficient to constitute an exception to the parole evidence rule. Id. (parole evidence rule does not forbid the use of evidence to show that the agreement was entered into as a result of fraud). As discussed herein, Plaintiffs have not shown that they had a right to rely on any purportedly fraudulent oral statements or that the alleged promises were false at the time they were made. See infra Section III. Because the Settlement Agreement was a fully integrated and unambiguous document and because this case does not fit within the fraud exception to the parole evidence rule, Plaintiffs' claims are barred by the parole evidence rule and Defendant's Motion for Summary Judgment will be granted.

## II. Defendant is Entitled to Summary Judgment on Count II

In Count II of their Complaint, Plaintiffs allege a claim for tortious interference. Specifically, they allege that Defendant interfered with Battlefield's "prospective contractual relationship with one or more lenders without justification or valid business reason" because they assigned the Battlefield Notes to American First. (Complaint, Doc. No. 1, ¶ 27). The undisputed facts demonstrate that Plaintiff cannot maintain a claim for tortious interference as a matter of law.

The elements necessary to establish a prima facie case of tortious interference with a business relationship under Missouri law are well settled: (1) a contract or a valid business relationship or expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) defendant's actions

were justified; and (5) damages resulted. American Business Interiors, Inc. v. Haworth, Inc., 798 F.2d 1135, 1142-1143 (8th Cir. 1986) (citing Rusk Farms, Inc. v. Ralston Purina, 689 S.W.2d 671, 679 (Mo. Ct. App. 1985); Fischer, Spuhl, Herzwurm & Associates, Inc. v. Forrest T. Jones & Co., 586 S.W.2d 310, 315 (Mo. 1979)). "With regard to the first element, 'the existence of a valid business expectancy will not be found where the facts showed a mere hope of establishing a business relationship which was tenuous. In order to have a claim for interference with a valid business expectancy, it is necessary to determine if the expectancy claimed was reasonable and valid under the circumstances alleged.'" Wash Solutions, Inc. v. PDQ Mfg., 395 F.3d 888, 895-896 (8th Cir. 2005) (quoting Serv. Vending Co. v. Wal-Mart Stores, 93 S.W.3d 764, 769 (Mo. Ct. App. 2002)). If the expectancy was not reasonable and valid, then there can be no claim for tortious interference with business expectancy. Id. Missouri law requires "proof of a reasonable probability or expectancy of entering into a business relationship--as opposed to an actual business relationship--to establish the proof necessary to support a tortious-interference claim." Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1017 (8th Cir. 2008) (citations omitted). "Liability for tortious interference 'cannot be predicated upon speculation, conjecture or guesswork, and no fact essential to submissibility can be inferred absent a substantial evidentiary basis.'" Tamko Roofing Prods. v. Smith Eng'g Co., 450 F.3d 822, 830 (8th Cir. Mo. 2006) (quoting Cmty Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n, 670 S.W.2d 895, 905 (Mo. Ct. App. 1984)).

Plaintiffs argue that they had a business expectancy with Missouri State Bank, one of the lenders Kersten approached about refinancing the Battlefield Notes. (Memorandum in Opposition, p. 12). Plaintiff Kersten claims he enjoyed a long-standing banking relationship with Missouri State Bank whereby Kersten borrowed millions of dollars for real estate deals. (Id.) Presumably, Plaintiffs

believe that, based upon this relationship alone, they would have obtained refinancing from Missouri State Bank absent some tortious interference by Defendant.

Plaintiffs' claim for tortious interference fails because Plaintiffs have provided no evidence that Missouri State Bank was interested in refinancing and no evidence why Missouri State Bank chose not to refinance the Battlefield Notes. Plaintiffs have not provided any factual support for a claim that they were not able to refinance the Battlefield Notes with Missouri State Bank because of any action taken by Defendant. Plaintiffs have not provided any evidence that Defendant knew that Plaintiffs discussed refinancing the Battlefield Notes with Missouri State Bank or knew that Plaintiffs and Missouri State Bank had a preexisting relationship.

Plaintiffs further allege that they had a business expectancy to refinance the Battlefield Notes because Defendant sold the Battlefield Notes to American First within ninety (90) days of the execution of the Settlement Agreement. (Memorandum in Opposition, p. 13). Such claim of a market for the Battlefield Notes, however, is merely speculation. Plaintiffs have provided no concrete evidentiary support for their claim that any bank was interested in refinancing the Battlefield Notes. Kersten, on behalf of Plaintiffs, admitted that they had "no strong commitment" to refinancing. (Defendant's Reply Memorandum in Support of Its Motion for Summary Judgment ("Reply Memorandum"), Doc. No. 33, p. 10; SUMF, ¶ 54). That the Battlefield Notes were sold by Defendant to American First does not support Plaintiffs' claim that there was a market, particularly because Defendant sold those Notes at a discount. (Reply Memorandum, p. 9). Given Plaintiffs' continual default on the Battlefield Notes, Plaintiffs' mere hope that a bank would refinance the Battlefield Notes is insufficient to withstand Defendant's Motion for Summary Judgment.

Rather, the undisputed evidence demonstrates that, at the time of American First's foreclosure, Battlefield had no business expectancy or any contractual relationship with any lenders

to refinance the Battlefield Notes. (SUMF, ¶ 54). The undisputed facts demonstrate that Kersten approached at least two financial institutions, Pinnacle Financial and Citibank Commercial Real Estate Group, regarding obtaining refinancing of the Battlefield Notes. (SUMF, ¶ 48).[1] Plaintiffs never received a loan commitment from Pinnacle regarding the Notes. (SUMF, ¶ 49). Plaintiffs filed an application with Citibank Commercial Real Estate Group after the execution of the Settlement Agreement. (SUMF, ¶ 50). Citibank never gave a loan to Plaintiffs, and Kersten cannot identify any reason why Citibank did not give a loan to Plaintiffs. (SUMF, ¶¶ 51-52). There is no evidence that Defendant provided any information to Pinnacle or Citibank that affected their decision whether to refinance the Battlefield Notes.

In addition, the evidence clearly demonstrates that Defendant was justified in selling the Battlefield Notes at a discount to American First. "[N]o liability arises for interfering with a contract or business expectancy if the action complained of was an act which the defendant had a definite legal right to do without any qualification." Deutsche Fin. Servs. Corp. v. BCS Ins. Co., 299 F.3d 692, 696 (8th Cir. 2002) (citation omitted). Although the Settlement Agreement extended the maturation date for the Battlefield Notes, Plaintiffs were still required to make payments. Plaintiffs, however, made only one payment after the execution of the Settlement Agreement before defaulting on their payments to Defendant. Under the terms of the Battlefield Notes and the Settlement Agreement, Defendant had the right to assign the Notes and was not required to allow a cure of any default by Plaintiffs. (SUMF, ¶¶ 26, 28, 32). Plaintiffs have not provided any evidence that Defendant did

---

[1] Plaintiffs also allege in their Memorandum in Opposition that Plaintiff Kersten "approached Missouri State Bank about refinancing the Promissory Notes." (Memorandum in Opposition, p. 12). The citation to the Kersten's affidavit, however, states only that "Kersten enjoyed a long borrowing relationship with Missouri State Bank, which loaned millions of dollars to Kersten and his entities for various real estate projects." (Plaintiff's Statement of Additional Uncontroverted Material Facts, Doc. No. 31-2, ¶ 6). This statement is insufficient to establish a business expectancy with respect to the refinancing of the Battlefield Notes.

anything that was not explicitly permitted under the Battlefield Notes or the Settlement Agreement. (SUMF, ¶¶ 28, 31, 32). Plaintiffs even acknowledge that their "evidence in this regard is not fully developed." (Memorandum in Opposition, p. 13, n. 6).[2] Thus, Defendant was clearly justified in assigning the Battlefield Notes in accordance with the terms of the Battlefield Notes and the Settlement Agreement.

Finally, the undisputed evidence demonstrates that Defendant did not take any action that damaged or impaired Plaintiffs' ability to refinance the Battlefield Notes. Kersten testified that he has no knowledge of any statement or conversation that National City had with any lender regarding refinancing the Battlefield Notes. (SUMF, ¶ 55). Kersten also has no personal knowledge of any communications between National City and any lending institutions about himself. (SUMF, ¶ 56). Plaintiffs cannot point to any facts to support a claim that Defendant's sale of the Battlefield Notes and their collateral effected their ability to refinance the Battlefield Notes. As a result, Defendant's Motion for Summary Judgment is on Count II is granted.

### III. Defendant is Entitled to Summary Judgment on Counts III and IV

The undisputed facts demonstrate that Plaintiffs' claims for fraudulent misrepresentation/inducement and negligent misrepresentation fails as a matter of law. The elements of fraudulent misrepresentation under Missouri law are: (1) the representation is false; (2) the representation is material; (3) the speaker knows that the representation is false; (4) the speaker

---

[2] In their Memorandum in Opposition, Plaintiffs again argue that they require additional time to conduct discovery regarding attempts to obtain refinancing in order to adequately respond to this point. (Memorandum in Opposition, p. 13, n. 6). This Court, however, granted several extensions of time to allow Plaintiffs to conduct discovery. (Doc. Nos. 13, 16, 19 and Court Orders dated August 18, 2008 and September 18, 2008). This Court denied Plaintiffs request when, after several extensions, Plaintiffs still had not represented that they had conducted any discovery. Plaintiffs cannot complain that their evidence is not "fully developed" when Plaintiffs failed to even initiate discovery even though they were afforded several opportunities to do so.

intends the hearer to act on the representation "in the manner reasonably contemplated"; (5) the hearer is ignorant that the representation is false; (6) the hearer relies on the representation's truth; (7) the hearer has a right to rely on the representation; and (8) the hearer is consequently and proximately injured. Cordry v. Vanderbilt Mortg. & Fin., Inc., 445 F.3d 1106, 1111-1112 (8th Cir. 2006) (citing Joel Bianco Kawasaki Plus, Inc. v. Meramec Valley Bank, 81 S.W.3d 528, 536 (Mo. banc 2002)). "Unlike negligent misrepresentation, 'a promise accompanied by a present intent not to perform is a misrepresentation sufficient to constitute fraud.'" Baum v. Helget Gas Prods., Inc., 440 F.3d 1019, 1024 (8th Cir. 2006) (citations omitted). "Negligent misrepresentation differs primarily in that the speaker must only fail 'to exercise reasonable care or competence in obtaining or communicating the information,' rather than know of its falsity." Cordry, 445 F.3d at 1112 (citing M & H Enters. v. Tri-State Delta Chems., Inc., 35 S.W.3d 899, 904 (Mo. Ct. App. 2001)). "A negligent misrepresentation claim cannot arise solely from evidence that the defendant did not perform according to a promise or statement of future intent." Baum, 440 F.3d at 1023-1024.

Plaintiffs claim that they relied on the following representations of Defendant:

> (1)   That the Settlement Agreement was designed to give Plaintiffs sufficient time to refinance the Battlefield notes;
>
> (2)   That the new maturity date on the Notes was set to July 31, 2005, expressly in order to give Plaintiffs sufficient time to refinance the Battlefield notes;
>
> (3)   That National City would continue to "work with" Plaintiffs and "assist them" in their efforts to refinance the Battlefield notes;
>
> (4)   That National City would not take any action that would "damage or impair" Plaintiffs' ability to refinance the Battlefield notes; and
>
> (5)   That National City was operating in good faith in entering into the Settlement Agreement and "would continue to act in good faith through July 31, 2005."

(Memorandum in Opposition, p. 2; Plaintiffs' Statement of Additional Uncontroverted Facts, Doc. No. 31-2, ¶¶ 1, 2).

The thrust of these alleged promises is that the Plaintiff Kersten signed the Settlement Agreement without understanding the legal important of the document, and instead relied on some nebulous statements of good faith and cooperation to guide their subsequent business relationship. These alleged promises, which were not included as part of the Settlement Agreement, cannot change the agreement between the parties. "[F]alse representations as to the legal effect of an instrument are no bar to an action thereon because a party signing such an instrument is presumed to know its contents and has no right to rely on the representations of the other party as to its legal effect." Stein v. Stein Egg & Poultry Co., 606 S.W.2d 203, 205 (Mo. Ct. App. 1980) (citing Motor Transportation Springfield v. Orval Davis Tire Co., Inc., 585 S.W.2d 195, 200 (Mo. Ct. App. 1979)). The only exceptions to this rule are if there was a relationship of trust between the two parties and where one party possess a "superior knowledge of the law and takes advantage of the other party's ignorance of the law to mislead him." Id. Parties are not entitled to rely on representations of agents and others, absent some confidential relationship or fraudulent inducement tending to convince the other party that he need not make an independent investigation of the facts. Hackett v. St. Joseph Light & Power Co., 761 S.W.2d 206, 210 (Mo. Ct. App. 1988).

Here, Kersten was an experienced negotiator and financier with banks related to various real estate dealings. (SUMF, ¶¶ 3-4). Kersten should have understood the terms of the Settlement Agreement and that he was required to make his monthly installment payments even though the Settlement Agreement did not mature until July 31, 2005, and that the Settlement Agreement permitted assignment of the Battlefield Notes. The terms of the Settlement Agreement clearly state the parties' mutual obligations and Defendant's rights in the event of a default by Plaintiffs. Plaintiffs cannot feign surprise or try to impose additional obligations than those required under the agreement. There is nothing in the record to show that Defendant represented that it had any special knowledge

or expertise in the law in an effort to persuade the Plaintiffs to sign the Settlement Agreement. Rather, as this Settlement Agreement arose out of litigation, where both parties were represented and the parties clearly dealt with each other at arms' length, the terms of the Settlement Agreement should be applied as written.

Furthermore, the undisputed facts show that Counts III and IV fail because Defendant's alleged promises were true. First, Defendant tried to "work with" Plaintiffs and give them an opportunity to pay the Battlefield Notes. The Settlement Agreement extended the maturity dates of the Battlefield Notes to July 31, 2005. (SUMF, ¶ 23). This additional time, if Plaintiffs had continued making their monthly installments, would have afforded Plaintiffs additional time to refinance the Battlefield Notes. Battlefield, however, paid only one monthly installment after the execution of the Settlement Agreement before defaulting. Further, there is no evidence that Defendant acted in bad faith (in fact, Plaintiffs have dismissed Count I which purported to allege a claim for bad faith). In addition, as shown above, Plaintiffs have provided no evidence that Defendant did anything to impair their credit or otherwise prevent them from obtaining refinancing. (See supra Section II). Thus, Defendant is entitled to summary judgment on Counts III and IV of Plaintiffs' Complaint because Plaintiffs have not demonstrated that they had a right to rely on the representations made by Defendant or that the purported representations were false.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 10) is **GRANTED**, and Plaintiffs' claims are dismissed with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

Dated this 27th day of October, 2008.

/s/ Jean C. Hamilton

UNITED STATES DISTRICT JUDGE